UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Esly Kania,

        Plaintiff,

v.

Flint Group, *also known as* Flint Group North America, *also known as* Flint Group Packaging Inks North America Corporation,

        Defendant.

Civil No. 21-1845 (DWF/DLM)

**MEMORANDUM OPINION AND ORDER**

___

Leopold B. Epee, Esq., Epee Law Firm LLC, counsel for Plaintiff Esly Kania.

Amanda M. Cialkowski, Esq., Matthew C. Murphy, Esq., Nilan Johnson Lewis PA, Joseph Charron, Jr., Esq., William F. Dugan, Esq., Baker & McKenzie, counsel for Defendant Flint Group.

___

## INTRODUCTION

This matter is before the Court on Defendant Flint Group's motion for summary judgment. (Doc. No. 36.) Plaintiff Esly Kania opposes the motion. (Doc. No. 44.) For the reasons set forth below, the Court grants the motion.

## BACKGROUND

In June 2018, Esly Kania, an African American from Kenya, was hired as a Quality Control Technician ("QC Tech") at Flint Group's manufacturing facility in Rogers, Minnesota. (Doc. No. 39-1 ("Kania Dep.") at 62-65.)

In October 2019, Flint Group laid off the facility's Quality Control supervisor as a cost-cutting measure. (*Id.* at 79, 236-37; Doc. No. 39-3 ("Vieira Dep.") at 26-27.) Paulo Vieira, Flint Group's Director of Research and Development, assigned the supervisor's quality assurance duties to Kania and quality control duties to Mark Lysdahl, another QC Tech. (Kania Dep. at 71-81; Vieira Dep. at 27.) Vieira indicated in a follow-up email that Kania and Lysdahl would "lead," respectively, Quality Assurance/QMS and Quality Control. (Kania Dep. at 73-74; Vieira Dep. at 26-36; Doc. No. 39-7.) Shortly after, Kania and Lysdahl were moved into cubicles.[1] (Kania Dep. at 75-77.)

A few months later, Flint Group reorganized, and Luciano David took over management of the Quality Department. (*Id.* at 78-81; Doc. No. 39-5 ("David Decl.") ¶¶ 3-5.) David oversaw six QC Techs, including Kania and Lysdahl, after the reorganization. (David Decl. ¶ 6.) Kania informed David and Flint Group's Human Resources Manager, Jessica Riehm, that he had been assigned the QA/QMS Lead role. (*Id.* at ¶¶ 7-8; Kania Dep. at 83-84.) Riehm told Kania that there had been a miscommunication and, while his duties had changed, he had not been promoted. (Doc. No. 39-4 ("Riehm Dep.") at 34-36.)

On April 28, 2020, Riehm, David, and Kania met to discuss Kania's role. (Riehm Dep. at 36-41; Vieira Dep. at 38-47; Kania Dep. at 93.) David changed Kania's job title to Quality Assurance Technician ("QA Tech") because his job duties were aligned more

---

[1] While Kania asserts that Vieira said he would investigate wage increases for Kania and Lysdahl (*see* Kania Dep. 75-77.), Vieira was not asked about this conversation during his deposition. The record shows that neither Kania nor Lysdahl received salary increases. (*Id.* at 76.)

2

with those of quality assurance than quality control. (Kania Dep. at 86-93; David Decl. ¶ 13.) Kania's job duties, wages, benefits, and reporting structure remained unchanged after the April meeting. (Kania Dep. at 91-93, 256.)

Around this time, David noted a few concerns that he had with Kania's performance. Specifically, David asserted that he assigned Kania "the responsibility of developing a methodology for the inspection of incoming materials, including the responsibility [of] performing those inspections," but Kania failed to document the process map for those inspections and failed to complete the inspections. (*See* David Decl. ¶¶ 10-12.) According to David, Kania "refused to perform the tasks I assigned to him, and he was not open to the coaching and feedback I provided him." (*Id.* ¶ 21.)

In June 2020, David promoted Lysdahl to Quality Control Lead ("QC Lead") "because he had over 17 years of experience in quality control, and he consistently met and exceeded [David's] expectations during the time [David] had been supervising him." (*Id.* ¶ 22.) David stated he did not consider Kania for the QC Lead position because Kania was focused on quality assurance duties, and he was the only QA Tech at the Rogers location. (*Id.* ¶¶ 25-26.) When Kania learned about the promotion, he emailed Riehm to ask why he was not given "an equal opportunity to interview" for the QC Lead position. (Kania Dep. at 108-10; Doc. No. 39-13.)

In July 2020, David and Riehm discussed Kania's performance by email. (Riehm Dep. at 78-81; Doc. No. 39-11.) Riehm then drafted a performance improvement plan ("PIP"), which listed teamwork, boss relationships, and dealing with ambiguity as areas for Kania to work on. (Doc. No 46-22 at 2.) That same month, a manager emailed David

3

and Kania with concerns over an incoming inspection process.  (Doc. No. 39-12.)  Kania had replied to that manager by forwarding his job description, indicating the inspections were not part of his job description.  (*Id.*)

Riehm and David then met with Kania and issued the PIP.  (Kania Dep. at 114-16, 127-36; Riehm Dep. at 51-71; David Decl. ¶ 37.)  The PIP required Kania to have weekly review meetings with Riehm and David to discuss his progress.  (Doc. No. 46-22 at 2.)  Kania refused to sign the PIP and further refused to discuss his performance deficiencies and key performance indicators.  (Kania Dep. at 121-22, 142-50; David Decl. ¶ 38.)

At the next meeting, Kania informed David and Riehm that he had filed a complaint of discrimination and retaliation with Denise Haven, Flint Group's Senior HR Director, based on Lysdahl's promotion.  (David Decl. ¶ 43; Kania Dep. at 149-50.)  This was the first time David learned of Kania's complaints.  (David Decl. ¶ 43.)  Haven asserts that she investigated Kania's complaints and found no evidence of discrimination.  (Doc. No. 39-13 ("Haven Dep.") at 14-23, 29-63.)

Kania refused to attend the PIP weekly review meetings on August 25 and September 1, arguing that Haven's investigation obviated the need to attend.  (Doc. No. 39-20 at 2; Riehm Dep. at 94.)  Riehm issued Kania a written warning for insubordination for failing to attend the September 1 meeting.  (Doc. No. 39-20 at 2-3; Riehm Dep. at 90-94.)  Kania attended the September 9 and 15 meetings but refused to discuss his performance deficiencies.  (Kania Dep. at 169-72; David Decl. ¶¶ 59, 66.)  According to David, Kania continued to fail to meet performance expectations and the key performance indicators set forth in his PIP.  (David Decl. ¶¶ 67-71; Doc. No. 39-26.)

4

At some point in August or September 2020, Riehm left Flint Group, and Chris Hagan took her place. (Riehm Dep. at 19.) David recommended to Hagan that Kania be terminated for failing to meet the performance expectations and key performance indicators as set forth in his PIP. (David Decl. ¶¶ 68-70.) Kania was terminated on October 2. (*Id.* ¶ 71; Kania Dep. at 173-76.)

Two months later, Kania filed charges of discrimination and retaliation against Flint Group with the Equal Employment Opportunity Commission ("EEOC"), which were cross-filed with the Minnesota Department of Human Rights ("MDHR"). (Kania Dep. at 196-98; Doc. No. 39-27.) On April 28, 2021, the EEOC issued Kania a Dismissal and Notice of Rights, declining to proceed with the investigation. (Doc. No. 39-29.) The MDHR then issued a letter adopting EEOC's final disposition, dismissing Kania's charge, and indicating that he must file a lawsuit within 45 days of his receipt of the notice. (Doc. No. 39-30.) Kania then filed this lawsuit, claiming that Flint Group violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.*, alleging retaliation and discrimination based on race and national origin. (Compl.) Flint Group now moves for summary judgment on the entirety of Kania's complaint. (Doc. No. 36.) Kania opposes the motion. (Doc. No. 44.)

## DISCUSSION

### I.     Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party opposing a motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 256.  "Conclusory arguments, without evidence, are insufficient as a matter of law to establish a material question of fact."  *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1019 (8th Cir. 2017).  The Court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party.  *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

## II. David Declaration

As an initial matter, Kania argues that the Court should not consider David's declaration because the declaration was submitted after the close of discovery.  Discovery was originally scheduled to be completed on or before September 30, 2022, but was later extended to October 14.  (*See* Doc. No. 27; Doc. No. 31 at 2.)  On October 14, Flint Group's counsel emailed Kania's counsel responses to document requests, supplemental documents, and Amended Rule 26 disclosures, which included David's declaration.  (Doc. No. 50-4.)  Flint Group offered to extend discovery further to allow Kania to depose David remotely.  (*Id.*)  David, however, was never deposed.  (*Id.*)  Kania's argument that the declaration was sent "two weeks after the close of discovery" (Doc. No. 44 at 23) is unfounded.

6

Kania also states that David's declaration is "suspicious" because Kania received it after other witnesses were deposed. (*Id.*) This assertion is meritless. David's declaration was signed on June 1, 2022, and received by Flint Group on June 10 (Doc. No. 50-2), while Haven, Vieira, and Riehm were all deposed months afterwards. (*See* Haven Dep. at 1; Vieira Dep. at 1; Riehm Dep. at 1.) Moreover, there is no evidence that Flint Group has tampered with the declaration. The Court will therefore consider David's declaration.

### III. MHRA Claims

Kania asserts discrimination and retaliation claims against Flint Group under the Minnesota Human Rights Act ("MHRA"). Specifically, Kania alleges that Flint Group discriminated against him based on his race and national origin and retaliated against him when he reported discrimination related to a job promotion. *See* Minn. Stat. §§ 363A.08, .15. The Minnesota Administrative Rules allow for cross-filing with other agencies. Thus, "[a] charge filed with EEOC . . . may be referred to the [Minnesota Department of Human Rights ("MDHR")]." Minn. R. 5000.0400, subp. 2a. In this case, when Kania filed his charge of discrimination with the EEOC, he signed a statement stating, "I want this charge filed with both the EEOC and the State or local Agency," in this case the MDHR. (Doc. No. 39-27.)

If the MDHR commissioner issues a dismissal, the claimant must bring a civil action within 45 days of receiving the notice. Minn. Stat. § 363A.33, subd. 1. Receipt of the dismissal notice is presumed five days from the date of service by mail. *Id.* To file a complaint after the filing window has run, Kania must offer evidence that "circumstances

7

beyond [his] control prevented [him] from serving the complaint within the statutory period." *Chappell v. Butterfield-Odin Sch. Dist. No. 836*, 673 F. Supp. 2d 818, 833 (D. Minn. 2009).

As noted above, Kania's EEOC charges were cross-filed with the MDHR. (Doc. No. 39-27.) The MDHR issued a Dismissal and Notice of Rights to Kania's home address on May 19, 2021, informing him that he had 45 days to bring a civil action. (Doc. No. 39-30.) Kania argues he did not receive the dismissal notice; however, it was sent to his home address, where he has lived since 2007, and is presumed to have been received five days from the date of service. (*Id.*; Kania Dep. at 16-17.) Kania filed his Complaint on July 26, after the 45-day window had lapsed. Moreover, Kania failed to present evidence that "circumstances beyond [his] control prevented [him] from serving the complaint within the statutory period." *Chappell*, 673 F. Supp. 2d at 833. Thus, Kania's claims under the MHRA are time-barred. *See Coleman v. Mpls. Pub. Sch. SSD #1*, No. 15-cv-4419, 2016 WL 4708495, at *5 (D. Minn. 2016) (dismissing the plaintiff's MHRA claim when the plaintiff's charge with the EEOC was cross-filed with the MDHR, and the plaintiff failed to file suit within the forty-five day right-to-sue window).

**IV.   Title VII:  Discrimination**

Kania also alleges that he was discriminated against based on his race and national origin in violation of Title VII. Kania asserts three employment actions that serve as the bases for his discrimination claim against Flint Group: (1) his demotion; (2) Flint

8

Group's failure to promote him; and (3) his termination. Flint Group argues that these employment actions do not sufficiently support Kania's discrimination claim.

### A.  Demotion

Kania alleges that his title change in April 2020 constitutes an adverse employment action that demonstrates discrimination. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). "[A] semantic change in title and a 'bruised ego' d[o] not constitute adverse employment action where pay, benefits and level of responsibility remained the same." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (citing *Flaherty v. Gas Rsch. Inst.*, 31 F.3d 451, 457 (7th Cir. 1994)).

In this case, the record shows that in October 2019 Flint Group assigned Kania additional job duties after another employee was laid off. Kania's salary and benefits, however, remained the same. There is a factual dispute as to whether, when Kania took on additional responsibilities, his title changed from QC Tech to Quality Assurance Lead. Kania asserts that his title changed, while Flint Group argues that Kania's title remained QC Tech. Then, in April 2020, Flint Group changed Kania's title to QA Tech, but his responsibilities, salary, and benefits remained the same. Kania argues that this constituted a demotion because his title changed from Quality Assurance Lead to QA Tech. Even if that were true, this "semantic change in title and a 'bruised ego' d[oes] not constitute adverse employment action" because Kania's "pay, benefits and level of

9

responsibility remained the same." *Id.* Thus, Kania's assertion that his change in title constitutes an adverse employment action fails as a matter of law.

### B. Failure-to-Promote

Kania also argues that Flint Group's failure to promote him to a Lead position constitutes an adverse employment action that demonstrates discrimination. To establish a prima facie case of discrimination on a failure-to-promote claim, Kania must show the following: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead. *Younts v. Fremont Cnty., Iowa*, 370 F.3d 748, 754 (8th Cir. 2004). When the position in question is not posted, a plaintiff "has a lighter burden when attempting to make a prima facie case of failure to promote than in a situation involving objective promotions criteria." *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 721 (8th Cir. 2003) (internal quotations omitted).

Kania is a member of a protected group based on his race and national origin. Kania has also put forth evidence that he was qualified for the Lead role, given his fifteen years of experience working in quality control. (Doc. No. 46-6.) Moreover, irrespective of whether Flint Group changed Kania's title to Quality Assurance Lead in October 2019, there is no dispute that Flint Group gave Kania additional responsibilities, which further supports Kania's assertion that his work performance at that time was good. Additionally, Kania argues that he was similarly situated to Lysdahl because "they were

both Quality Technicians of equal ranking, doing the same work for the same manager." (Doc. No. 44 at 27.)

Flint Group argues that Lysdahl and Kania were not similarly situated because "Lysdahl had significantly more experience than Kania, had always met and exceeded expectations, and 'knew the ink space very well.'" (Doc. No. 37 at 19.) Flint Group asserts that it had concerns with Kania's performance beginning in March 2020, months before Lysdahl's promotion. (David Decl. ¶ 11.) It appears, however, that the bulk of Flint Group's concerns with Kania's work performance occurred after Lysdahl was promoted. Given the lighter burden placed on plaintiffs to make a prima facie case of failure to promote when the job was not posted, and drawing all inferences in favor of Kania, the Court concludes that Kania has established a prima facie case of discrimination.

Because Kania has established a prima facia case of discrimination for Flint Group's failure to promote him, "the burden shifts to [Flint Group] to articulate a legitimate, nondiscriminatory reason for not promoting [Kania]." *Cox v. First Nat'l. Bank*, 792 F.3d 936, 938-39 (8th Cir. 2015) (internal quotations omitted). Flint Group asserts that it bases promotions principally on experience, and Lysdahl had fifteen more years of experience working with Flint Group than Kania. (Haven Dep. at 29-31; Vieira Dep. at 18.) Moreover, beginning October 2019, Flint Group had Kania focus on quality assurance duties while Lysdahl focused on quality control duties. Because there were multiple QC Techs, it was necessary to designate one a Lead QC Tech. Flint Group argues that it chose Lysdahl because he was already focused on quality control, and he

11

had more experience working at Flint Group than Kania. The Court concludes that Flint Group has sufficiently articulated a nondiscriminatory reason for its decision not to promote Kania.

The burden again shifts to Kania to demonstrate that Flint Group's justifications "are mere pretext for intentional discrimination." *Cox*, 792 N.W.3d at 939. "The employee may demonstrate pretext either by showing that the employer's explanation is unworthy of credence because it has no basis in fact or by persuading the court that a prohibited reason more likely motivated the employer. *Id.*

Kania argues that because Lysdahl "was treated much more favorably that [sic] Kania," this demonstrates that "Flint Group discriminated unlawfully." (Doc. No. 44 at 28.) This argument, however, does not explain why Flint Group's reason for promoting Lysdahl has "no basis in fact" nor does it explain why a "prohibited reason more likely motivated the employer." *Cox*, 792 N.W.3d at 939. Overall, Kania argues that he was qualified for the promotion, but he has failed to show that Lysdahl was a "less qualified applicant." *Id.* at 939 (emphasis removed); *see Torgerson v. City of Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011) ("If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination . . . arises.") (cleaned up). Nor does Kania give examples of conduct that would show a discriminatory motive. In fact, Kania stated that he did not experience any other discriminatory comments or conduct while employed at Flint Group, aside from his speculation around the circumstances of Lysdahl's promotion and Kania's alleged demotion. (Kania Dep. at 184.) Overall, Kania has failed to demonstrate pretext and his

claim of discrimination based on Flint Group's failure to promote him fails as a matter of law.

### C. Termination

Additionally, Kania argues that his termination is evidence of discrimination. To survive summary judgment, Kania must show the following: "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011).

Again, there is no dispute that Kania is a member of a protected class. Flint Group argues, however, that at the time Kania was fired, he was not meeting Flint Group's legitimate expectations. The record demonstrates that around the time David started as Kania's supervisor, David "became concerned about [] Kania's performance and his failure to meet the requirements of the job." (David Decl. ¶ 10.) For example, David assigned Kania the responsibility of developing an inspection process for incoming materials, "including the responsibility for performing those inspections." (*Id.* ¶ 11.) Kania did not develop a process and did not complete the inspections. (*Id.*) And in July 2020, a manager emailed Kania and said that he was worried about an upcoming inspection process. (Doc. No. 39-12.) Kania responded to his email by attaching his job description, indicating that it was not his job to conduct the inspections. (*Id.*; Kania Dep. at 133.)

Kania met with David and Riehm to discuss his performance and, ultimately, Riehm drafted a PIP, which she then issued to Kania. (David Decl. ¶¶ 10-12, 27-29;

13

Riehm Dep. at 51-71.) The record shows that Kania failed to attend weekly PIP review meetings, and when he did attend, he refused to discuss his performance deficiencies or participate in the meetings and was ultimately issued a written warning for insubordination. (Kania Dep. at 164-72; David Decl. ¶¶ 40-71.) "Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination." *Putnam v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003) (internal quotations omitted).

Kania argues he had a history of positive performance reviews before David became his supervisor, and while he was employed elsewhere outside Flint Group. (*See* Kania Dep. at 122-24.) But "an employer is free to rely on recent performance reviews more heavily" than past performance when evaluating an employee. *Sieden*, 846 F.3d at 1018 (internal quotation marks omitted). Taken together, Kania has not produced sufficient evidence demonstrating that he consistently complied with the PIP process and met Flint Group's employment expectations.

Kania also asserts that the PIP was unwarranted, but placement on a PIP, "without more, [does] not constitute an adverse employment action." *Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir. 2005) (per curiam); *see Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 880 n.2 (8th Cir. 2014) ("[The plaintiff's] placement on the PIP alone does not constitute an adverse employment action and cannot support her claim of retaliation."). And Kania does not argue that the PIP was "setting [him] up to fail" or so unreasonably onerous that it could amount to a constructive discharge. *Fischer v. Andersen Corp.*, 483 F.3d 553, 557 (8th Cir. 2007).

Finally, Kania has failed to present sufficient evidence to raise a genuine issue of material fact that the circumstances surrounding his termination give rise to an inference of discrimination.  "[A] plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class." *Pye*, 641 F.3d at 1019.  While the Court has concluded that there is a genuine dispute as to whether Kania and Lysdahl were similarly situated at the time of Lysdahl's promotion, the record shows that the two were not similarly situated when Kania was terminated.  Kania failed to comply with the PIP process and there is no evidence that Lysdahl had similar performance issues or documented insubordination at the time Kania was fired.  Moreover, while Kania may disagree with Flint Group's evaluation of his performance, he has provided "no evidence that the ultimate decision maker in [his] discharge was biased against [him]." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 888 (8th Cir. 2015).

For these reasons, the Court concludes that Kania has failed to establish a prima facie case of discrimination related to his termination.

V.  **Title VII: Retaliation**

Finally, Kania asserts that Flint Group retaliated against him when he complained to Flint Group that its decision to promote Lysdahl was discriminatory.  To establish a prima facie case of retaliation, Kania must show the following:  (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005).  If Kania presents a

15

prima facie case of retaliation, Flint Group may then rebut Kania's claim by "articulating a legitimate, non-discriminatory reason for its adverse employment decision." *Id.*

"For a report of discrimination to be statutorily protected activity under Title VII, it must include a complaint of national-origin discrimination or sufficient facts to raise that inference." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 978 (8th Cir. 2012). The record shows Kania sent an email to Riehm on August 6, 2020, asking why he was not given notice of the job opening so that he could have "an equal opportunity to interview" for the lead position. (Doc. No. 39-13.) The email does not plausibly allege discrimination based on race or national origin and thus the email does not constitute protected activity. *Guimaraes*, 674 F.3d at 978-79. On August 17, 2020, Kania sent an email to Haven, where he specifically complained of racial discrimination. (*See* Doc. No. 39-16.) This August 17 email, therefore, constitutes protected activity.

While Kania has demonstrated that he engaged in protected activity on August 17 and was fired on October 2, he must also show a causal connection between the two. "Evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation" between the protected activity and the adverse employment action. *Kasper*, 425 F.3d at 504. The record reflects that Flint Group began having concerns about Kania's performance as early as March 2020, with the formal PIP process starting in July 2020. Moreover, Flint Group issued the PIP to Kania on August 6, before Kania engaged in protected activity. Overall, Kania has failed to establish a prima facie case of retaliation.

Because Kania has failed to sufficiently demonstrate retaliation or discrimination, in violation of Title VII, these claims fail as a matter of law and the Court therefore grants Flint Group's motion for summary judgment.

## CONCLUSION

For the reasons outlined above, the Court grants Flint Group's motion for summary judgment.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Flint Group's motion for summary judgment (Doc. No. [36]) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 14, 2023                               s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge